UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOSEPH MICHAEL GREEN, #607305,

          Petitioner,

                                    CASE NO. 2:14-CV-13393
v.                                     HONORABLE VICTORIA A. ROBERTS

DUNCAN MACLAREN,

          Respondent.
_____/

**OPINION AND ORDER DENYING THE PETITION FOR A WRIT OF
HABEAS CORPUS, DENYING A CERTIFICATE OF APPEALABILITY,
AND DENYING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL**

**I.    Introduction**

Michigan prisoner Joseph Michael Green ("Petitioner") filed a pro se Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 asserting that he is being held in violation of his constitutional rights. Petitioner was convicted of first-degree murder, assault with intent to commit murder, and possession of firearm during the commission of a felony following a jury trial in the Wayne County Circuit Court in 2009. He was sentenced to life imprisonment without the possibility of parole on the murder conviction, a concurrent term of 15 to 30 years imprisonment on the assault conviction, and a consecutive term of two years imprisonment on the felony firearm conviction. In his pleadings, Petitioner raises claims concerning a prosecution witness's invocation of his Fifth Amendment privilege and the admission of his prior testimony, the alleged denial of his right to be present and to counsel at a critical stage, and the effectiveness of trial and appellate counsel.

For the reasons set forth, the Court denies habeas relief. The Court also denies a certificate of appealability and denies leave to proceed *in forma pauperis* on appeal.

**II.    Facts and Procedural History**

Petitioner's convictions arise from a shooting that occurred in Detroit, Michigan on May 15, 2007. Carl Hairston was killed and Jerrance Lewis was injured. Petitioner and his brother, Terrance Jamal Williams, were tried jointly before separate juries in 2008. Petitioner's brother was convicted in that proceeding, but Petitioner's jury deadlocked. Petitioner was subsequently retried and convicted. The Michigan Court of Appeals described the underlying facts, which are presumed correct on habeas review, *see* 28 U.S.C. § 2254(e)(1); *Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009), as follows:

> In the early morning hours of May 15, 2007, Hairston drove his mother's Chevy Tahoe to pick up Lewis and Thomas Cook. Although Hairston and Lewis were under 21, the trio traveled to the Perfect Beat nightclub near the corner of Fort Street and Schaefer Road in southwest Detroit. They left the club shortly before closing, reentered their vehicle and traversed Fort Street in front of the club for several minutes while listening to loud music. Williams (then age 20) approached the Tahoe from behind while driving a light blue minivan. Williams pulled parallel to the driver's side of the Tahoe. The rear, passenger-side sliding door of the minivan opened and Green (then age 22) fired more than 20 shots from an AK–47 at the Tahoe. The minivan collided with the Tahoe and the minivan's door was torn off in the fray. Hairston was struck with several bullets and was pronounced dead on arrival at the hospital. Lewis was shot numerous times in the abdomen and side, required three surgeries to repair internal damage, and was hospitalized for a month. Cook escaped unharmed. He fled the scene and was only secured as a trial witness through the significant efforts of the prosecutor and law enforcement officers.

> Investigating officers soon received an anonymous tip that "Joe Green" was involved in the shooting, but they were unable to locate any suspects on that information alone. Investigators then discovered a burned minivan, missing its sliding rear door, abandoned in a field. The door recovered on Fort Street perfectly matched the minivan. The officers traced the vehicle's identification number and learned that it was registered to Juanita Williams, the mother of defendant Williams and defendant "Joe Green." When Lewis recovered sufficiently to speak to the officers, he specifically identified defendants by name as his attackers. Lewis indicated that he had seen defendants driving the minivan in the past and clearly saw their faces during the shooting. Lewis then confirmed defendants' identities through a photographic line-up.

2

Green and Williams had a long-standing feud with Hairston and Lewis. Lewis admitted that the two groups fought each time they met, sometimes with weapons. The parties stipulated that Williams had previously shot Lewis in the hand. Cornelius Wade, a jailhouse informant, testified that Williams confessed to the drive-by shooting while housed in the Wayne County Jail. According to Wade, a man name Armond hired Williams and Green to kill Lewis and Hairston to avenge the robbery of Armond's carwash (which served as a front for a drug-dealing and gambling operation). Wade alleged that a man named Aaron Campbell was at the Perfect Beat on the night of the shooting and contacted defendants by telephone to alert them of Hairston's and Lewis's presence. The prosecution also presented evidence that someone threw a firebomb into and fired a barrage of bullets at Lewis's home the night before defendants' preliminary examination.

Defendants asserted alibis in support of their defenses. Williams also presented evidence from his friends Jamaal and Jameel Croft, who claimed to have been standing outside the Perfect Beat at the time of the shooting, and asserted that the minivan's occupants were heavy-set Mexican or Caucasian men. Defendants attempted to establish that their minivan had been stolen earlier that evening from an apartment complex in Lincoln Park.[1] Williams' jury did not believe his defense theory and convicted him of first-degree premeditated murder, MCL 750.316, and assault with intent to murder, MCL 750.83. The court sentenced Williams to life without parole for the murder conviction and 20 to 30 years imprisonment for the assault charge.

After the original trial, the Michigan State Police Forensic Laboratory retested the shell casings found outside the Perfect Beat and Lewis's home. The state lab could neither confirm nor deny whether any of the casings were fired from a single weapon. The investigator testified that AK–47s are loosely tooled resulting in discrepancies between shells fired from a single gun. Accordingly, it remained possible that the shell casings had been fired from a single weapon.

Green proceeded to retrial after which the jury convicted him of first-degree premeditated murder, assault with intent to murder and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. The court sentenced Green to concurrent terms of life without parole and 15 to 30 years imprisonment for his murder and assault convictions to be served consecutive to a two-year term for felony-firearm.

---

[1]Defendant's maternal aunt, Tracey George, initially told police that she was in the basement on the night of the shooting. She asserted that she looked through the basement window facing the driveway and saw the minivan pull out. George told the officers that she assumed one of the defendants was driving. George later attempted to file a vehicle theft report with the Lincoln Park Police Department, but the officer found her story too incredible to register on LIEN.

In the meantime, Williams had appealed his convictions as of right. We held Williams' appeal in abeyance pending the State Lab's analysis of the ballistic evidence. *People v. Williams*, unpublished order of the Court of Appeals, entered April 1, 2009 (Docket No. 286097). We then remanded for the trial court to consider whether Williams was entitled to a new trial based on newly discovered evidence. *People v. Williams*, unpublished order of the Court of Appeals, entered January 15, 2010 (Docket No. 286097). The trial court concluded that the exchange of ballistic evidence would not make a different result probable on retrial and therefore denied Williams' motion for a new trial.

Green also sought a new trial, but based on the ineffective assistance of counsel at his second trial. The trial court rejected Green's claim....

*People v. Green*, No. 291335, 2011 WL 6004067, *1-3 (Mich. Ct. App. Dec. 1, 2011) (unpublished) (footnote in original).

Following his convictions and sentencing, Petitioner filed an appeal of right with the Michigan Court of Appeals raising claims concerning prosecution witness Jerrance Lewis's invocation of his Fifth Amendment privilege at Petitioner's second trial and the admission of his testimony from the first trial, and the effectiveness of trial counsel for failing to produce two witnesses, Jamaal and Jameel Croft, who testified before the co-defendant's jury at the first trial, and Petitioner's second trial. The court denied relief on those claims and affirmed Petitioner's convictions. *Id.* at *11-14. Petitioner filed an application for leave to appeal with the Michigan Supreme Court, which was denied in a standard order. *People v. Green*, 491 Mich. 920, 812 N.W.2d 738 (2012).

Petitioner then filed a motion for relief from judgment with the state trial court raising claims concerning Jerrance Lewis's invocation of his Fifth Amendment privilege and the admission of his testimony from the first trial, the alleged denial of his right to be present and to counsel at a critical stage, the pre-trial identification procedures, and the effectiveness of trial and appellate counsel. While that case was pending, Petitioner instituted a habeas action in this Court raising those same

claims, which the Court dismissed without prejudice to allow Petitioner to fully exhaust his claims in the state courts before proceeding on federal habeas review. *Green v. MacLaren*, No. 13-CV-10651 (E.D. Mich. Feb. 22, 2013).

The state trial court subsequently denied Petitioner's motion for relief from judgment finding that certain claims had already been denied on direct appeal and that the remaining claims lacked merit. *People v. Green*, No. 07-010617-01-FC (Wayne Co. Cir. Ct. March 6, 2013). Petitioner filed an application for leave to appeal with the Michigan Court of Appeals raising the same claims, which was denied for failure to "meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Green*, No. 316280 (Mich. Ct. App. Oct. 25, 2013). Petitioner then filed an application for leave to appeal with the Michigan Supreme Court, which was similarly denied. *People v. Green*, 495 Mich. 993, 845 N.W.2d 120 (2014).

Petitioner instituted this action in August, 2014. As noted, he raises claims concerning Jerrance Lewis's invocation of his Fifth Amendment privilege and the admission of his prior testimony, the alleged denial of his right to be present and to counsel at a critical stage, and the effectiveness of trial and appellate counsel. Respondent filed an answer to the petition, contending that it should be denied because certain claims are procedurally defaulted and all of the claims lack merit. Petitioner replied.

## III.    Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified at 28 U.S.C. § 2241 *et seq.*, sets forth the standard of review that federal courts must use when considering habeas petitions brought by prisoners challenging their state court convictions. The AEDPA provides in relevant part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d) (1996).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)); *see also Bell v. Cone*, 535 U.S. 685, 694 (2002).

"[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409. "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court

6

decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Lindh*, 521 U.S. at 333, n. 7; *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (per curiam)).

The United States Supreme Court has held that "a state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003)). A habeas court "must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id*. Thus, in order to obtain federal habeas relief, a state prisoner must show that the state court's rejection of a claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.; see also White v. Woodall*, _ U.S. _, 134 S. Ct. 1697, 1702 (2014). Federal judges "are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong." *Woods v. Donald*, _ U.S. _, 135 S. Ct. 1372, 1376 (2015). A habeas petitioner cannot prevail as long as it is within the "realm of possibility" that fairminded jurists could find the state court decision to be reasonable. *Woods v. Etherton*, _ U.S. _, 136 S. Ct. 1149, 1152 (2016).

Section 2254(d)(1) limits a federal court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *Williams*, 529 U.S. at 412; *see also Knowles v.*

*Mirzayance*, 556 U.S. 111, 122 (2009) (noting that the Supreme Court "has held on numerous occasions that it is not 'an unreasonable application of clearly established Federal law' for a state court to decline to apply a specific legal rule that has not been squarely established by this Court") (quoting *Wright v. Van Patten*, 552 U.S. 120, 125-26 (2008) (per curiam)); *Lockyer*, 538 U.S. at 71-72. Section 2254(d) "does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" *Harrington*, 562 U.S. at 100. Furthermore, it "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002); *see also Mitchell*, 540 U.S. at 16.

The requirements of "clearly established law" are to be determined solely by Supreme Court precedent. Thus, "circuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court,'" and "[i]t therefore cannot form the basis for habeas relief under AEDPA." *Parker v. Matthews*, 567 U.S. _, 132 S. Ct. 2148, 2155 (2012) (per curiam); *see also Lopez v. Smith*, _ U.S. _ 135 S. Ct. 1, 2 (2014) (per curiam). The decisions of lower federal courts may be useful in assessing the reasonableness of the state court's decision. *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007) (citing *Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003)); *Dickens v. Jones*, 203 F. Supp. 2d 354, 359 (E.D. Mich. 2002).

Lastly, a state court's factual determinations are presumed correct on federal habeas review. 28 U.S.C. § 2254(e)(1). A petitioner may rebut this presumption with clear and convincing evidence. *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998). Habeas review is also "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

## IV.     Discussion

### A.     Fifth Amendment Privilege/Use of Prior Testimony Claim

Petitioner first asserts that he is entitled to habeas relief because Jerrance Lewis improperly

invoked his Fifth Amendment privilege at Petitioner's second trial and the trial court erred in

admitting Lewis's testimony from the first trial.  The Michigan Court of Appeals described the

relevant facts:

> Several months before Green's second trial, Lewis informed the court, prosecutor
> and defense counsel through his own attorney that he would not testify. At that
> point, Lewis faced an unrelated murder charge. He refused to testify at Green's
> retrial, on the advice of counsel, to avoid making any statements that could be used
> against him in his own trial. It appears from the record that the court spoke to Lewis
> in chambers at some point and Lewis reiterated his intent to invoke his Fifth
> Amendment privilege against self-incrimination. Ultimately, Lewis was not
> convicted of murder, but our record is silent regarding the exact fate of those
> charges. Lewis was instead convicted of felony-firearm and delivery of cocaine. As
> he refused to testify at Green's retrial, the court permitted the prosecution to read
> into the record the transcript of Lewis's testimony from the first trial.

*Green*, 2011 WL 6004067 at *11.  Respondent contends that this claim lacks merit.

A federal court may only grant habeas relief to a person who is "in custody in violation of

the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  Alleged trial court

errors in the application of state evidentiary law are generally not cognizable as grounds for federal

habeas relief.  *See Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("it is not the province of a

federal habeas court to reexamine state-court determinations on state-law questions"); *Serra v.*

*Michigan Dep't of Corrections*, 4 F.3d 1348, 1354 (6th Cir. 1993).  "Trial court errors in state

procedure or evidentiary law do not rise to the level of federal constitutional claims warranting

relief in a habeas action, unless the error renders the proceeding so fundamentally unfair as to

deprive the petitioner of due process under the Fourteenth Amendment."  *McAdoo v. Elo*, 365 F.3d

487, 494 (6th Cir. 2004) (quoting *Estelle*, 502 U.S. at 69-70); *see also Wynne v. Renico*, 606 F.3d

867, 871 (6th Cir. 2010) (citing *Bey v. Bagley*, 500 F.3d 514, 519-20 (6th Cir. 2007)); *Bugh v.*

*Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003).

      The Michigan Court of Appeals denied relief on this claim.  The court explained:

> We review a trial court's evidentiary rulings for an abuse of discretion and underlying legal questions regarding the rules of evidence de novo. *People v. Farquharson*, 274 Mich App 268, 271; 731 NW2d 797 (2007).[4]  Pursuant to MRE 804(b)(1), if a witness is "unavailable," a party may avoid the hearsay rule and proffer:
>
>> Testimony given as a witness at another hearing of the same or a different proceeding, if the party against whom the testimony is now offered ... had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination.[5]
>
> Relevant to Green's appeal, a declarant is "unavailable" if he "is exempted by ruling of the court on the ground of privilege from testifying concerning the subject matter of the declarant's statement." MRE 804(a).
>
> It is well-established that a witness who invokes his Fifth Amendment privilege against self-incrimination is "unavailable" as defined in MRE 804(a). *People v. Meredith*, 459 Mich 62, 66; 586 NW2d 538 (1998), citing *People v. Fields*, 450 Mich 94, 107; 538 NW2d 356 (1995), and *People v. Underwood*, 447 Mich 695, 702, 708; 526 NW2d 903 (1994). *See also United States v. Salerno*, 505 U.S. 317, 321; 112 S Ct 2503; 120 L Ed 2d 255 (1992). Green now contends that the court

---

[4]Green also claims that he was denied his constitutional right to present a defense, specifically to show that Lewis later recanted his accusation. However, Green has not established that Lewis would have recanted. Green attached a handwritten statement to his appellate brief and claims that it was penned by Lewis. That statement is neither an affidavit nor is it notarized. And Green never presented that statement to the trial court.

[5]MCL 768.26 similarly allows for the admission of a declarant's prior testimony:

Testimony taken at an examination, preliminary hearing, or at a former trial of the case, or taken by deposition at the instance of the defendant, may be used by the prosecution whenever the witness giving such testimony can not, for any reason, be produced at the trial, or whenever the witness has, since giving such testimony become insane or otherwise mentally incapacitated to testify.

was first required to conduct a hearing to determine whether Lewis validly asserted his Fifth Amendment privilege. Green's reliance on *People v. Poma*, 96 Mich App 726; 294 NW2d 221 (1980), to support this position is misplaced.

In *Poma*, this Court approved a trial court's decision to conduct an evidentiary hearing to determine whether a particular witness validly asserted his Fifth Amendment privilege. *Id*. at 732. The trial court had determined that the witness had not validly asserted his privilege and ordered him to testify. The witness then invoked his privilege on the stand in front of the jury and otherwise claimed not to remember any details of the crime. *Id*. at 729–730. The question in Poma was whether the defendant was prejudiced by the witness's assertion of his privilege at trial, not whether a separate hearing was a required step in deeming a witness "unavailable" to testify. The purpose of such a hearing is to prevent prejudice to a defendant by a witness who invokes his Fifth Amendment privilege before the jury, thereby creating a negative inference against the defendant. *Id*. at 732–733. That danger was avoided here as Lewis was not placed on the stand. Moreover, a hearing was necessary in *Poma* because the witness was a co-participant in the drug trafficking activity for which the defendant was on trial. *Id*. at 729, 732. The witness in this case is a victim. Accordingly, *Poma* is inapplicable and the dangers it sought to prevent were not present in this case.

We agree with Green that Lewis likely did not have a valid reason to invoke his Fifth Amendment privilege. Nothing he said about the current shooting, in which Lewis was a victim, likely would have incriminated him. The court theoretically could have precluded reference to Lewis's pending charges and limited the scope of examination to Green's charged offenses. Yet, Lewis had already expressed his adamant refusal to testify knowing the potential consequences of that decision. The court "was not obligated to threaten [Lewis] with contempt" before declaring him "unavailable." *People v. Burgess*, 96 Mich App 390, 401; 292 NW2d 209 (1980). Lewis was already facing life imprisonment on his pending murder charge. As such, any threat of contempt and its relatively minor punishment "would probably have been an exercise in futility." *Id*.

The transcript of Lewis's testimony also comports with the requirements for admissibility in MRE 804(b)(1). Green faced the same charges in the original trial and on retrial. He clearly had "an opportunity ... to develop [Lewis's] testimony" in the original trial and actually made good use of that opportunity. Green had a "similar motive to develop [Lewis's] testimony" at both the original trial and retrial—to avoid conviction for an offense in which Lewis was the victim. Accordingly, we find no error warranting relief in the admission of Lewis's former testimony at Green's retrial.

We also reject Green's challenge to the court's refusal to allow defense counsel to argue in closing that Lewis did not testify because he would have perjured himself.

11

There simply was no evidence on the record that Lewis intended to perjure himself on the stand. Counsel may not make arguments in closing without any support in the record. *People v. Buckey*, 424 Mich 1, 28–29; 378 NW2d 432 (1985). In any event, counsel actually noted the inconsistencies between Lewis's transcribed testimony and his earlier statements to the police in closing, essentially arguing that Lewis had not testified truthfully at the first trial.

*Green*, 2011 WL 6004067 at *11-13.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. First, to the extent that Petitioner asserts that the trial court erred in admitting the testimony under Michigan Rule of Evidence 804 or any other provision of Michigan law, he merely alleges a violation of state law which does not justify federal habeas relief. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Serra v. Michigan Dep't of Corrections*, 4 F.3d 1348, 1354 (6th Cir. 1993). "Trial court errors in state procedure and/or evidentiary law do not rise to the level of federal constitutional claims warranting relief in a habeas action, unless the errors render the proceeding so fundamentally unfair as to deprive the petitioner of due process under the Fourteenth Amendment." *McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir. 2004) (quoting *Estelle*, 502 U.S. at 69-70); *see also Wynne v. Renico*, 606 F.3d 867, 871 (6th Cir. 2010) (citing *Bey v. Bagley*, 500 F.3d 514, 519-20 (6th Cir. 2007)). Accordingly, to the extent that Petitioner asserts that the trial court erred under Michigan law, he fails to state a claim upon which habeas relief may be granted. State courts are the final arbiters of state law and the federal courts will not intervene in such matters. *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Oviedo v. Jago*, 809 F.2d 326, 328 (6th Cir. 1987); *see also Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Sanford v. Yukins*, 288 F.3d 855, 860 (6th Cir. 2002).

Second, with regard to federal law, Petitioner fails to establish that the admission of the disputed testimony violated his constitutional rights or otherwise rendered his trial fundamentally

12

unfair.  Petitioner asserts that the admission of Lewis's prior testimony violated his confrontation rights.  The Confrontation Clause of the Sixth Amendment guarantees a criminal defendant the right to confront the witnesses against him.  *Davis v. Alaska*, 415 U.S. 308, 315 (1973).  The Sixth Amendment protections are not so broad, however, as to exclude the admission of certain hearsay statements against a criminal defendant despite his or her inability to confront the declarant at trial. *Maryland v. Craig*, 497 U.S. 836, 847-48 (1990).  In *Crawford v. Washington*, 541 U.S. 36, 54 (2004), the Supreme Court held that the testimonial statement of a witness who does not appear at trial is admissible if the witness is unavailable to testify and the defendant had a prior opportunity to cross-examine the witness.  Testimonial statements include grand jury testimony, preliminary hearing testimony, and prior trial testimony, as well as statements made during police interrogations.  *Id.* at 54.

For Confrontation Clause purposes, unavailability requires only that the prosecution made a good faith effort to obtain the declarant's presence at trial.  *Barber v. Page*, 390 U.S. 719, 724-25 (1968); *Winn v. Renico*, 175 F. App'x 728, 733 (6th Cir. 2006).  When a witness refuses to testify, he or she is unavailable whether the refusal to testify is based upon privilege or is punishable by contempt.  *United States v. Bourjaily*, 781 F.3d 539, 544 (6th Cir. 1986) (quoting *Mayes v. Sowders*, 621 F.2d 850, 856 (6th Cir. 1980) (citing cases), and ruling that co-defendant's refusal to testify made him unavailable); *see also United States v. Johnson*, 581 F.3d 320, 327 (6th Cir. 2009) (likelihood that co-defendant would invoke Fifth Amendment if called to testify rendered him unavailable); *Favorite v. Bergh*, No. 11-10266, 2013 WL 5816503, *8 (E.D. Mich. Oct. 29, 2013) (witness who refused to further testify at trial was unavailable and court was not required to threaten him with contempt before finding him unavailable and admitting his preliminary

examination testimony, especially since he was already serving time in prison); *Blackston v. Rapelje*, 907 F. Supp. 2d 878, 896-98 (E.D. Mich. 2012) (no confrontation violation where witnesses refused to testify at petitioner's second trial and court admitted testimony from first trial). Moreover, a federal habeas court may not overturn a state court's decision on unavailability merely because additional steps might have been taken to make the witness available. *Hardy v. Cross*, _ U.S. _, 132 S. Ct. 490, 495 (2011).

In this case, even assuming that the trial court erred in allowing Lewis to invoke his Fifth Amendment privilege at Petitioner's second trial, the court did not violate Petitioner's confrontation rights by admitting Lewis's testimony from the first trial. Lewis was adamant in his refusal to testify at the second trial, which rendered him unavailable, and any threat of contempt would have been futile given his own confinement and pending criminal charges. Additionally, Petitioner had the same motivation and a full opportunity to cross-examine Lewis at the first trial. Lewis's prior testimony was thus admissible at Petitioner's second trial and the Confrontation Clause was not violated.

Petitioner also asserts that the admission of Lewis' prior testimony impaired his right to present a defense. In particular, he claims that Lewis would have recanted his testimony from the first trial identifying him as the shooter. In support of this claim, Petitioner offers a handwritten statement, allegedly from Lewis, in which Lewis states that he saw the driver, but not the shooter, involved in the crime and states that he identified Petitioner based upon what he was told and his belief that Petitioner was involved due to their ongoing feud.

The right of an accused to present a defense has long been recognized as "a fundamental element of due process." *Washington v. Texas*, 388 U.S. 14, 19 (1967); *see also Holmes v. South*

14

*Carolina*, 547 U.S. 319, 329-31 (2006) (state rule excluding evidence of third party guilt based solely on strength of prosecution's case violated defendant's right to present a defense); *Chambers v. Mississippi*, 410 U.S. 284, 302 (1973) (exclusion of hearsay statements critical to defense which "bore persuasive assurances of trustworthiness," coupled with refusal to permit cross-examination of the declarant, violated defendant's right to due process). A defendant's right to present evidence is not unlimited, however, and may be subject to "reasonable restrictions." *United States v. Scheffer*, 523 U.S. 303, 308 (1998). A defendant "does not have an unfettered right to offer evidence that is incompetent, privileged, or otherwise inadmissable under standard rules of evidence." *Montana v. Egelhoff*, 518 U.S. 37, 42 (1996) (quoting *Taylor v. Illinois*, 484 U.S. 400, 410 (1988)); *see also Holmes*, 547 U.S. at 326 (recognizing that "well-established rules of evidence permit trial judges to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury"). When deciding if the exclusion of evidence impairs a defendant's rights, the question is not whether the excluded evidence would have caused the jury to reach a different result. The question is whether the defendant was afforded "a meaningful opportunity to present a complete defense." *Crane v. Kentucky*, 476 U.S. 683, 690 (1986) (quoting *California v. Trombetta*, 467 U.S. 479, 485 (1984)); *see also Chambers*, 410 U.S. at 302.

Petitioner was not denied the right to present a defense. There was no indication at Petitioner's second trial that Lewis would have recanted his prior testimony, which could have subject him to perjury charges – Lewis simply refused to testify. The alleged recantation statement was not presented at trial and first appeared on appeal. The statement is also of dubious authorship given that it is not an affidavit and is neither dated nor notarized. Petitioner fails to establish that

15

Lewis would have recanted his prior testimony or that he was otherwise denied the right to present a defense at his second trial.  In fact, the record indicates that Petitioner was able to challenge Lewis's prior testimony by noting inconsistencies with his police statements and that he was able to present other evidence in support of his defense.  Petitioner fails to establish a violation of his constitutional rights.  Habeas relief is not warranted on this claim.

### B.     Ineffective Assistance of Trial Counsel Claim

Petitioner next asserts that he is entitled to habeas relief because trial counsel was ineffective for failing to investigate and produce two witnesses, Jamaal and Jameel Croft, who testified before his co-defendant's jury at the first trial, at his second trial.  The Michigan Court of Appeals described the relevant facts as follows:

> Green claims that attorney Wyatt Harris was ineffective on retrial because he did not adequately investigate and then call Jamaal and Jameel Croft as witnesses. The Croft brothers had testified at the first trial but only before Williams' jury. At that trial, Jamaal claimed that the driver of the van was a heavy—set Mexican or Caucasian male with a red bandanna over his face. Jamaal claimed there were two men in the back of the van—one sitting down and a Caucasian or Mexican shooter with black spiky hair. Jameel testified that a heavy-set Caucasian or Mexican man was driving the van but admitted that he did not see the people in the backseat. Williams' jury clearly disbelieved the Croft brothers' version of events as they convicted Williams of murder and assault.
>
> * * *
>
> At the *Ginther* hearing, Harris testified that his defense theory was that Williams perpetrated the crime with someone other than Green. He was aware of the Croft brothers' testimony ahead of retrial because he read the transcripts from the first trial and was informed about these witnesses by attorney Johnson. Harris noted that the Croft brothers' testimony contradicted the defense theory that Williams was the driver. Moreover, Williams had been convicted despite the Croft brothers' testimonies, indicating that the jury found them incredible. Harris opined that Jamaal's version of events was incredible and Jameel's potential testimony would be unhelpful. Harris was concerned that their testimony would be undermined by cross-examination on even slight errors in the details, further jeopardizing their credibility. This proved to be true when the prosecutor questioned Jamaal at the *Ginther* hearing.

16

*Green*, 2011 WL 6004067 at *13-14 (citation footnote omitted). Respondent contends that this claim lacks merit.

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to the effective assistance of counsel. In *Strickland v. Washington*, 466 U.S. 668 (1984), the United States Supreme Court set forth a two-prong test for determining whether a habeas petitioner has received ineffective assistance of counsel. First, a petitioner must prove that counsel's performance was deficient. This requires a showing that counsel made errors so serious that he or she was not functioning as counsel as guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687. Second, the petitioner must establish that counsel's deficient performance prejudiced the defense. Counsel's errors must have been so serious that they deprived the petitioner of a fair trial or appeal. *Id*.

To satisfy the performance prong, a petitioner must identify acts that were "outside the wide range of professionally competent assistance." *Id*. at 690. The reviewing court's scrutiny of counsel's performance is highly deferential. *Id*. at 689. There is a strong presumption that trial counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id*. at 690. The petitioner bears the burden of overcoming the presumption that the challenged actions were sound trial strategy.

As to the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. A reasonable probability is one that is sufficient to undermine confidence in the outcome of the proceeding. *Id*. "On balance, the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the

17

adversarial process that the [proceeding] cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686.

The Supreme Court has confirmed that a federal court's consideration of ineffective assistance of counsel claims arising from state criminal proceedings is quite limited on habeas review due to the deference accorded trial attorneys and state appellate courts reviewing their performance. "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Harrington*, 131 S. Ct. at 788 (internal and end citations omitted). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id*.

Citing the *Strickland* standard, the Michigan Court of Appeals denied relief on this claim. The court explained in relevant part:

> We agree with the trial court's conclusion that Jameel's testimony would be irrelevant because he testified, both at the first trial and at the *Ginther* hearing, that he did not see the shooter. Therefore, he could not exculpate Green. We further agree with the trial court and Harris that Jamaal's original trial testimony was incredible, supporting Harris's strategic decision not to call him as a witness. Moreover, the court noted that Jamaal's *Ginther* hearing testimony was inconsistent with his own testimony in the first trial, and that his claims were inconsistent with all other testimony. The court concluded that "there is absolutely nothing to be offered by the testimony of either of the witnesses that shows there is even a remote possibility—let alone a reasonable likelihood, that the outcome would have been different."
>
> As Jameel could not exculpate Green and Jamaal was unable to keep his story straight, Harris reasonably chose to omit them from his witness list on retrial. Green was not denied a substantial defense by their absence. Accordingly, we affirm Green's convictions and sentences and the trial court's denial of his motion for a new trial.

*Green*, 2011 WL 6004067 at *14.

18

The state court's denial of relief is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts.   First, Petitioner fails to establish that trial counsel's performance was deficient.  The state court record indicates that counsel was well aware of Jameel Croft's and Jamaal Croft's potential testimony based upon their appearance as witnesses before co-defendant Williams' jury at the first trial and that he made a strategic decision not to call them to testify at Petitioner's second trial.  Counsel's decision was reasonable given that Jameel's testimony would not have exculpated Petitioner and Jamaal's testimony was subject to serious challenge due to the inconsistencies in his statements.  Second, Petitioner fails to establish that he was prejudiced by counsel's conduct.  There is no reasonable probability that the outcome of the trial would have been different given that Jameel's testimony was not exculpatory, that Jamaal's testimony was not particularly credible, and that the prosecution presented significant evidence of Petitioner's guilt, including the surviving victim's positive identification of Petitioner as the shooter and Petitioner's brother as the driver, the ongoing feud between the parties involved in the incident, and the fact that the minivan used in the shooting was registered to Petitioner's mother.  Petitioner fails to demonstrate that trial counsel erred or that he was prejudiced by counsel's conduct as required under the *Strickland* standard.  Habeas relief is not warranted on this claim.

### C.   Right to Be Present/Absence of Counsel Claims

Petitioner asserts that he is entitled to habeas relief because neither he nor trial counsel was present at a pre-trial hearing concerning Jerrance Lewis's invocation of his Fifth Amendment privilege and refusal to testify at the second trial.  Respondent contends that these claims are waived/procedurally defaulted and lack merit.

The United States Supreme Court recognized that a criminal defendant has a fundamental right to be present at all critical stages of a criminal proceeding. *Iowa v. Tovar*, 541 U.S. 77, 80-81 (2004); *Rushen v. Spain*, 464 U.S. 114, 117 (1983). That is, a defendant "has a due process right to be present in his own person whenever his presence has a relation, reasonably substantial, to the fulness of his opportunity to defend against the charge." *Kentucky v. Stincer*, 482 U.S. 730, 745 (1987); *see also United States v. Riddle*, 249 U.S. F.3d 529, 534 (6th Cir. 2001) (criminal defendant has a constitutional right to be present at "all stages of the trial where his absence might frustrate the fairness of the proceedings"). This right is derived from the Due Process Clause of the Fifth and Fourteenth Amendments, as well as from the Sixth Amendment's Confrontation Clause. *United States v. Gagnon*, 470 U.S. 522, 526 (1985). A defendant, however, does not have the right to be present at a proceeding "when presence would be useless, or the benefit but a shadow." *Stincer*, 482 U.S. at 745.

The right to be present during critical stages of trial may be knowingly and voluntarily waived, *Riddle,* 249 F.3d at 534; *see also Taylor v. United States*, 414 U.S. 17, 19-20 (1973), and waiver may be implied from a defendant's conduct. *United States v. Marshall*, 248 F.3d 525, 535 (6th Cir. 2001); *Cuoco v. United States*, 208 F.3d 27, 30 (2d Cir. 2000). A violation of the right to be present at critical stages of trial is subject to harmless error analysis. *Rushen*, 464 U.S. at 117.

The Sixth Amendment to the United States Constitution provides for the right to counsel in criminal prosecutions. U.S. CONST. AMEND. VI. Consequently, a criminal defendant has a right to counsel during the critical stages of his or her criminal proceedings. *See, e.g., Bell v. Cone*, 535 U.S. 685, 695-96 (2002); *Roe v. Flores-Ortega*, 528 U.S. 470, 483 (2000); *United States v. Cronic*,

466 U.S. 648, 659 (1984); *United States v. Wade*, 388 U.S. 218, 227 (1967); *see also Van v. Jones*, 475 F.3d 292, 311-12 (6th Cir. 2007).

The complete denial or absence of counsel at a critical stage of the proceedings is a *per se* Sixth Amendment violation which mandates a presumption of prejudice and is generally not subject to harmless error review. *See Holloway v. Arkansas*, 435 U.S. 475, 489 (1978) (ruling that reversal is automatic when a defendant is denied counsel during a critical stage or throughout the prosecution of a capital offense); *see also Cronic*, 466 U.S. at 659-60; *Van*, 475 F.3d at 312. A partial denial of counsel or the absence of counsel at a non-critical stage of the proceedings, however, is not such a structural error. Rather, such a trial-type error requires an inquiry into the prejudicial effect and/or harmlessness of the error. *Satterwhite v. Texas*, 486 U.S. 249, 256-58 (1988); *Rushen*, 464 U.S. at 117-18; *Coleman v. Alabama*, 399 U.S. 1, 11 (1970); *Wade*, 388 U.S. at 239-40; *Hereford v. Warren*, 536 F.3d 523, 532-33 (6th Cir. 2008).

Petitioner first raised these issues in his motion for relief from judgment on collateral review in the state courts. The trial court denied relief on these claims, explaining:

> The record is clear, despite defendant's argument, that his counsel was advised of Lewis' position prior to Lewis and his attorney approaching the court.
>
> More important is the fact that defendant offers no legal or factual support for the right to participate in and cross-examine Lewis during a hearing on his assertion of a privilege. Cases cited, such as *People v Medcoff*, 344 Mich 108 (1955) and *People v Hull*, 86 Mich 449, (1891) are inapplicable as there was no evidence adduced with respect to defendant. Defendant also relies repeatedly on *Webb v Texas*, 409 U.S. 95 (1972), which likewise has no bearing on the instant case. There the judge bullied a prospective defense witness into not testifying.

*Green*, No. 07-010617-01-FC at *3-4. The Michigan appellate courts both denied leave to appeal pursuant to Michigan Court Rule 6.508(D).

The state courts' decisions are neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. Petitioner fails to cite, nor can the Court find, any Supreme Court precedent which establishes that a pre-trial hearing involving a witness's invocation of his or her Fifth Amendment privilege and refusal to testify is a critical stage of a criminal proceeding at which a defendant has a constitutional right to be present, or to have counsel present. Consequently, the state courts' denials of relief cannot be deemed contrary to clearly established Supreme Court precedent or an unreasonable application thereof. *See Coleman v. Bergh*, 804 F.3d 816, 818-19 (6th Cir. 2015) (ruling that because the Supreme Court has never held that a hearing on a motion for new trial is a critical stage, there is no "clearly established federal law as determined by the Supreme Court" creating a right to counsel at such a hearing so that appellate counsel had no basis to raise a Sixth Amendment violation and vacating grant of certificate of appealability on ineffective assistance of appellate counsel claim); *see also Aceval v. Maclaren*, _ F. App'x _, 2016 WL 7210108, *1 (6th Cir. Dec. 13, 2016) (denying habeas relief on novel due process claim concerning retrial after a mistrial because it was unsupported by Supreme Court precedent).

Furthermore, the trial court's inquiry/hearing concerned a purely legal matter involving witness Lewis's own Fifth Amendment rights and refusal to testify. At the hearing, Lewis's attorney stated Lewis's intentions and Lewis confirmed that if called to testify at the second trial, he would invoke his Fifth Amendment rights and would be unavailable to testify. 2/12/09 Hrg. Tr., pp. 3-5. As such, it did not implicate Petitioner's "privilege of presence." *Stincer*, 482 U.S. at 745.

The record further demonstrates that defense counsel was aware of Lewis's planned invocation of his Fifth Amendment privilege and refusal to testify at the second trial (based upon

Lewis's own pending criminal charges), 10/31/08 Hrg, Tr., pp. 11-12, and essentially waived his right to be present at the pre-trial hearing in which Lewis confirmed his intentions.  2/12/09 Hrg. Tr., pp. 5.  Despite not appearing at that hearing, defense counsel nonetheless had an opportunity to contest the matter before and/or during trial – and actually raised an objection to Lewis not testifying on the first day of the second trial.  2/17/09 Trial Tr., pp. 5-6.

Petitioner fails to demonstrate that his presence, or defense counsel's presence, at the pre-trial hearing would have contributed to the fairness of the hearing, served any useful purpose, or had any effect whatsoever on the court's ruling or the outcome of his second trial.  He thus fails to establish a violation of his right to be present or his right to counsel at a critical stage of trial and/or that his absence or defense counsel's absence at the pre-trial hearing was prejudicial.  Even if an error occurred, it was harmless as it did not have a "substantial and injurious effect or influence in determining the jury's verdict."  *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *see also Fry v. Pliler*, 551 U.S. 112, 117-18 (2007) (confirming that the *Brecht* standard applies in "virtually all" habeas cases); *Ruelas v. Wolfenbarger*, 580 F.3d 403, 411 (6th Cir. 2009) (ruling that *Brecht* is "always the test" in the Sixth Circuit).  Habeas relief is not warranted on these claims.

### D.     Ineffective Assistance of Appellate Counsel Claim

Lastly, Petitioner asserts that he is entitled to habeas relief because appellate counsel was ineffective for failing to raise his collateral review claims on direct appeal.  Respondent contends that this claim lacks merit.

As discussed *supra*, in order to establish ineffective assistance of counsel, a habeas petitioner must show that counsel's performance was deficient and that the deficient performance prejudiced the defense.  *Strickland*, 466 U.S. at 687.  With regard to appellate counsel, it is

23

well-established that a criminal defendant does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal. *Jones v. Barnes*, 463 U.S. 745, 751 (1983). The Supreme Court has explained:

> For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every "colorable" claim suggested by a client would disserve the … goal of vigorous and effective advocacy …. Nothing in the Constitution or our interpretation of that document requires such a standard.

*Id*. at 754. Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990). In fact, "the hallmark of effective appellate advocacy" is the "process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Barnes*, 463 U.S. at 751-52). "Generally, only when ignored issues are clearly stronger than those presented will the presumption of effective assistance of appellate counsel be overcome." *Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir. 2002). Appellate counsel may deliver deficient performance and prejudice a defendant by omitting a "dead-bang winner," defined as an issue which was obvious from the trial record and would have resulted in reversal on appeal. *Meade v. Lavigne*, 265 F. Supp. 2d 849, 870 (E.D. Mich. 2003).

Petitioner first raised this claim on collateral review. The state trial court denied relief finding that the claim lacked merit because the underlying issues lacked merit. *Green*, No. 07-010617-01-FC at *6. The state appellate courts denied relief under Michigan Court Rule 6.508(D).

The state courts' denial of relief is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. Petitioner fails to show that by omitting the claims presented in his motion for relief from judgment, appellate counsel's performance fell outside the wide range of professionally competent assistance. Appellate counsel raised substantial

24

claims on direct appeal, including the Fifth Amendment privilege/admission of prior testimony claim and the ineffective assistance of trial counsel claim. None of the other claims subsequently raised by Petitioner are "dead-bang winners." Moreover, even if appellate counsel erred in some fashion, Petitioner cannot show that he was prejudiced by counsel's conduct, given that the underlying claims lack merit. *See* discussion *supra*. Habeas relief is not warranted on this claim.

## V.      Conclusion

For the reasons stated, the Court concludes that Petitioner is not entitled to federal habeas relief on his claims. Accordingly, the Court **DENIES** and **DISMISSES WITH PREJUDICE** the Petition for a Writ of Habeas Corpus.

Before Petitioner may appeal the Court's decision, a certificate of appealability must issue. *See* 28 U.S.C. § 2253(c)(1)(a); FED. R. APP. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a federal court denies relief on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the court's assessment of the constitutional claim debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Petitioner makes no such showing. Accordingly, the Court **DENIES** a certificate of appealability. The Court also **DENIES** leave to proceed *in forma pauperis* on appeal as an appeal cannot be taken in good faith. *See* FED. R. APP. P. 24(a).

**IT IS SO ORDERED**.

S/Victoria A. Roberts
VICTORIA A. ROBERTS
UNITED STATES DISTRICT JUDGE

Dated: January 26, 2017